IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| GENEVIEVE T. ENGLUND, | HONORABLE JEROME B. SIMANDLE |
| Plaintiff, | CIVIL NO. 05-5436 |
| v. | |
| | **OPINION** |
| JO ANNE B. BARNHART, COMMISSIONER OF SOCIAL SECURITY ADMINISTRATION, | |
| Defendant. | |

APPEARANCES:

Alan H. Polonsky, Esq.
POLONSKY & POLONSKY
512 White Horse Pike
Audubon, NJ 08106
     Attorney for Plaintiff

Christopher J. Christie
United States Attorney
     By:  Karla J. Gwinn
          Special Assistant United States Attorney
Social Security Administration
Office of the General Counsel
26 Federal Plaza, Room 3904
New York, NY 10278
     Attorney for Defendant


**SIMANDLE**, District Judge:

     This matter comes before this Court pursuant to Section

205(g) of the Social Security Act, as amended, 42 U.S.C. §

405(g), to review the final decision of the Commissioner of the

Social Security Administration, denying the application of

Plaintiff Genevieve T. Englund ("Plaintiff") for Disability
Insurance Benefits under Title II of the Social Security Act and
Supplemental Security Income under Title XVI of the Social
Security Act.   42 U.S.C. § 401, et seq.   This Court must
determine whether the Administrative Law Judge ("ALJ") properly
found that Plaintiff was not disabled after concluding that
Plaintiff's residual functional capacity allowed her to return to
her past relevant work.   For the reasons stated below, this Court
will remand to the ALJ for reconsideration.

## I. **BACKGROUND**

### A. **Procedural History**

Plaintiff filed an application for Disability Insurance
Benefits and Supplemental Security Income on July 10, 2003,[1]
alleging disability since May 8, 2003.   (R. at 53.)   Plaintiff
alleged numerous limitations on her ability to work, including
severe lower back pain, arthritis, numbness in the right leg, a
broken left ankle, high blood pressure, and depression.   (R. at
66.)   Plaintiff's application was denied on October 2, 2003.   (R.
at 27.)   Plaintiff filed a request for reconsideration on October
20, 2003, (R. at 117-20), which was denied on April 5, 2004.   (R.

---

[1] Both Plaintiff and the ALJ mistakenly cite June 13, 2003
as the filing date. Plaintiff's brief makes several other date
mistakes, however this opinion will use the correct dates as
found in the record.

at 36.)   Plaintiff filed a request for a hearing before an ALJ on April 14, 2004.  (R. at 40.)  On April 12, 2005, ALJ Suanne Strauss held the hearing in Voorhees, New Jersey.  (R. at 290.) On May 12, 2005, the ALJ issued a decision unfavorable to Plaintiff, finding that Plaintiff was not disabled within the meaning of the Act.  (R. at 13, 16, 22.)  Plaintiff filed a request for review with the Appeals Council on June 30, 2005. (R. at 12.)  Her appeal was denied on September 23, 2005.  (R. at 8.) Plaintiff filed the instant action with this Court on November 16, 2005.

### B.   Evidence in the Record

#### 1.   Plaintiff's Personal and Work History

Plaintiff was born on April 25, 1947.  (R. at 63.) Plaintiff is divorced (R. at 53) and lives with her daughter and daughter's two children, Plaintiff's grandchildren.  (R. at 97.) Plaintiff has completed high school.  (R. at 155.)

Plaintiff worked mostly at delicatessens and convenience stores before she stopped working on May 8, 2003 due to her alleged disability.  (R. at 53, 78.)  From February of 2002 to May of 2003, Plaintiff worked at Rose Cleaners & Tayloring, Inc., (R. at 58), where she frequently lifted bags of clothes weighing 20-25 pounds, tagged clothes, and worked the cash register.  (R. at 101-02.)  From October of 2001 to February of 2002, Plaintiff worked at Americom Inc., (R. at 58), where as a checker she

3

sorted checks and recorded them in a log book.  (R. at 101, 103.)
From August of 1994 to September of 2002, Plaintiff worked at
Carmens Cold Cuts (R. at 57), where she took orders, sliced meats
and cheeses, prepared sandwiches, and frequently lifted items
weighing 50 pounds or more.  (R. at 101, 105.)  From April of
1987 to March of 1994, Plaintiff worked at Wawa, Inc. (R. at 56-
57), where she took orders, sliced meats and cheeses, worked the
cash register, and frequently lifted items weighing 25 pounds.
(R. at 101, 106.)  From September of 1987 to June of 1989,
Plaintiff worked at K & R Transportation, Inc. (R. at 56), where
she drove a school bus.  (R. at 101, 107.)

     Plaintiff claims that she is disabled and therefore cannot
work.  When she initially applied for benefits in 2003, Plaintiff
was obese: she was five feet, nine inches tall and weighed 210
pounds.  (R. at 66.)  Plaintiff also claimed that she had lower
back pain, sciatic nerve pain, a herniated disc, arthritis,
problems with tendons in her right ankle, a broken left ankle,
depression, high blood pressure, and heart problems.  (R. at 66.)
Due to these claimed injuries and illnesses, Plaintiff alleged
that she could not stand, bend, or lift for long periods.  (R. at
66.)

     At the administrative hearing, Plaintiff attributed her
problems to the heavy lifting her job at the cleaners required.
(R. at 298.)  Plaintiff also complained of pain in her left arm.

4

(R. at 302.)   She also testified that she had undergone
replacement surgery on her right knee.   (R. at 303.)   Plaintiff
testified that she was able to drive, do light housework, (R. at
301.), could only walk about ten feet without a cane, and about
another ten feet with a cane.   (R. at 308.)

Additionally, Plaintiff testified that she was having
problems sitting during the hearing, and requested to stand.   (R.
at 309.)   Plaintiff's attorney pointed out that Plaintiff was
wearing shorts and that she had a large scar on her right knee,
and asked Plaintiff to move so the ALJ could see.   (R. at 309.)
The ALJ interjected, "I know what a knee replacement scar looks
like.   I know people with knee replacements who go skiing in
three months. . . ."   (R. at 309.)   Plaintiff replied that she
was wearing shorts because wearing pants irritated her tender
knee.   (R. at 309.)

Furthermore, Plaintiff testified at the hearing that she had
been treated by a psychiatrist for the past two years for
depression and anxiety. (R. at 303-04.) Plaintiff stated that,
due to her psychiatric problems, she would have gotten lost if
she had driven herself to the hearing, she had lost her appetite,
and that she had not been sleeping well.   (R. at 307.)

Also at the hearing, a vocational expert, Daniel Rappucci,
testified about Plaintiff's past work.   (R. at 310.)   Mr.

Rappucci classified her job at the cleaners as SVP 3[2], light. He classified her job as a deli slicer as SVP 2, light. He classified her job as a checker as SVP 4, sedentary. The ALJ directed Mr. Rappucci's attention to a Residual Functional Capacity ("RFC") assessment completed after Plaintiff's knee replacement surgery.  (R. at 312.)  Based on this RFC, Mr. Rappucci opined that Plaintiff could perform her checker job. (R. at 312.)  On cross-examination, Plaintiff's attorney asked Mr. Rappucci if Plaintiff's psychiatric impairments would make her a "less than satisfactory employee" - to which he replied yes.  (R. at 315-16.)

## 2.   **Plaintiff's Medical History**

### a.   Physical Impairments: Left Ankle

On September 2, 1994, Dr. Elliot Bodofsky found that Plaintiff had a complicated fibular fracture in her left ankle held together by a plate and screws and recommended continued physical therapy.  (R. at 130-31.)

### b.   Physical Impairments: Heart Problems

On March 6, 1996, Dr. Alfonso LaMorte of Southern New Jersey Cardiac Specialists reported to Dr. Harry Carnes, Plaintiff's

---

[2] SVP is an acronym for specific vocational preparation, which comes from the Dictionary of Occupational Titles, a publication of the Department of Labor containing descriptions of requirements for thousands of jobs in the national economy.  See generally Boone v. Barnhart, 353 F.3d 203, 206-07 (3d Cir. 2004). The SSA considers the job requirement information from this source reliable.  Id.

6

family doctor, that Plaintiff had atrial arrhythmia consistent
with atrial tachycardia and hypertension.  (R. at 132.)

### c.  Physical Impairments: Right Ankle

On July 23, 2002, Dr. Kevin Bufalino of South Jersey
Radiology Associates wrote to Dr. Carnes that there was no
evidence of a fracture in Plaintiff's right ankle.  (R. at 139.)
On September 2, 2002, Dr. Evan Shack of South Jersey Radiology
Associates reported to Dr. Robert Bachman of South Jersey
Radiology Associates that an MRI showed a partial thickness tear
of the posterior tibialis tendon of Plaintiff's right ankle.  (R.
at 138.)

### d.  Physical Impairments: Back and Musculoskeletal Complaints

On May 13, 2003, Dr. James Elder of South Jersey Radiology
Associates wrote to Dr. Stephen Horowitz of South Jersey
Orthopedic Associates that radiographs of Plaintiff's spine,
pelvis and hips showed normal hips and minor degenerative changes
to the spine.  (R. at 136.)  On June 3, 2003, Dr. Horowitz wrote
to Dr. Carnes that an MRI of Plaintiff's spine revealed just a
very small disc herniation at L5-S1 with minimal neural
compression.  (R. at 146.)

On June 27, 2003, Dr. Horowitz again wrote to Dr. Carnes,
reporting that he could not find objective causes for most of
Plaintiff's musculoskeletal complaints of pain.  (R. at 145.)
Dr. Horowitz recommended a bone scan due to Plaintiff's multiple

7

complaints, but also noted that Plaintiff left his office unhappy
and did not think she would have the recommended bone scan.  (R.
at 145.)

On July 3, 2003, Dr. Louis Zeiger of The Cooper Health
System performed a whole body bone scan on Plaintiff for Dr.
Carnes.  (R. at 166.)  The bone scan was within normal limits.
(R. at 166.)

### c.   Physical Impairments: Right Knee

On December 5, 2003, Dr. Richard Rosenthal of The Cooper
Health System reported to Dr. Carnes that Plaintiff's right knee
had small joint effusion, a partial tear or sprain of the
anterior cruciate ligament ("ACL"), and mild soft tissue edema
anterior to the patella.  (R. at 162.)

On January 7, 2004, Dr. Nithyashuba Khona performed a
consultative orthopedic examination and diagnosed Plaintiff with
degenerative joint disease of the spine and knees, and found that
Plaintiff had mild to moderate limitations on kneeling and
squatting because of a tear in her ACL. (R. at 178.)

On July 28, 2004, Dr. Michael Harrer of Orthopedic
Reconstruction Specialists diagnosed Plaintiff with left elbow
lateral epicondylitis and early degenerative arthritis of both
knees.  (R. at 256.)  On September 8, 2004, Plaintiff saw Dr.
Harrer again after she twisted her right knee at a wedding
reception.  (R. at 255.)  Dr. Harrer drained her knee and

8

injected it with Depo-Medrol and lidocaine.  (R. at 255.).  Then,
on January 12, 2005, Dr. Harrer reported that Plaintiff had
failed conservative treatment and had elected for surgery.  (R.
at 252.)  On February 1, 2005, Dr. Harrer admitted Plaintiff to
Our Lady of Lourdes Medical Center for elective surgery on her
right knee.  (R. at 248.)

       f.   Mental Impairments

On September 9, 2003, Dr. Young Lee of the New Jersey
Department of Labor performed a mental examination of Plaintiff.
(R. at 154.)  Dr. Lee found that Plaintiff had signs of
depression and had limited interpersonal relationships. (R. at
156.)  Additionally, Dr. Lee found that Plaintiff could not
follow directions because of her depression.  (R. at 156.)  Dr.
Lee concluded that Plaintiff's psychiatric impairment was
moderate to severe and that she needed psychiatric treatment.
(R. at 156.)  On September 25, 2003, a Dr. Joynson called Dr. Lee
for clarification regarding Plaintiff's ability to follow
directions.  (R. at 158.)  Dr. Lee said that Plaintiff could
follow simple directions, but would have difficulty with more
complicated directions.  (R. at 158.)

On December 9, 2003, Dr. Belinsky of South Jersey Behavioral
Health Resources performed a psychiatric evaluation of Plaintiff.

(R. at 261-66.)   Dr. Belinsky gave Plaintiff a GAF[3] score of 60, and recommended therapy and psychotropic medication.  (R. at 266.)   Plaintiff accepted these recommendations.  (R. at 266.) On November 24, 2004, therapist Maureen Kelly of South Jersey Behavioral Health Resources noted that Plaintiff had severe cognitive and affective disorders.  (R. at 267.)

A series of illegibly signed documents, each titled "Medical Management Note for Adults," further track Plaintiff's mental health.  (R. at 268-73.)  On December 14, 2004, Plaintiff was found to have increased depression and no change in anxiety.  (R. at 273.)  On March 2, 2005, Plaintiff was found to have increased depression and anxiety.  (R. at 270.)  On April 11, 2005, Plaintiff was found to have decreased depression, but reported that she felt "better."  (R. at 268.)

### g.  Residual Functional Capacity Assessments

On August 28, 2003, a medical consultant performed a Physical Residual Functional Capacity Assessment of Plaintiff, concluding that Plaintiff could occasionally lift fifty pounds, frequently lift twenty-five pounds, stand or walk for six hours in an eight-hour workday, and sit for six hours in an eight-hour workday.  (R. at 167-74.)

_____

[3] GAF is an acronym for a score on the Global Assessment of Functioning Scale, as established by the American Psychiatric Association in Diagnostic and Statistical Manual of Mental Disorders.  See generally Winters v. Barnhart, 153 Fed. Appx. 846, 847 n. 2 (3d Cir. 2005).

10

On September 25, 2003, medical consultant Dr. Joynson performed a Mental Residual Functional Capacity Assessment of Plaintiff, concluding that Plaintiff had "markedly limited" abilities: to "understand and remember detailed instructions" and to "carry out detailed instructions."   (R. at 192-209.) Additionally, Plaintiff had "moderately limited" abilities: to "maintain attention and concentration for extended periods," to "complete a normal workday and workweek without interruptions from psychologically based symptoms," to "interact appropriately with the general public," to "respond appropriately to changes in the work setting," and to "travel in unfamiliar places or use public transportation."   (R. at 192-93.)   Finally, Dr. Joynson concluded that Plaintiff had "some mild to moderate impairments in memory and concentration due to depression but was able to recall 2 of 3 words and [complete] serial 7's [sic]."   (R. at 194.)

On February 28, 2003, Dr. Harrer filled out a Residual Functional Capacity Questionnaire.   (R. at 249-50.)   He noted that Plaintiff could sit for eight hours, stand for one hour at a time for up to four hours, or walk for three hours in an eight-hour workday.   (R. at 249.)   Furthermore, he found that Plaintiff could never squat or crawl.   (R. at 250.)

11

## II. **DISCUSSION**

### A. **Standard of Review**

Under 42 U.S.C. § 405(g), Congress provided for judicial
review of the Commissioner's decision to deny a claimant's
application for Disability Insurance Benefits.  Ventura v.
Shalala, 55 F.3d 900, 901 (3d Cir. 1995).  A reviewing court must
uphold the Commissioner's factual decisions where they are
supported by "substantial evidence."  42 U.S.C. §§ 405(g),
1383(c)(3); Fargnoli v. Massanari, 247 F.3d 34, 38 (3d Cir.
2001); Sykes v. Apfel, 228 F.3d 259, 262 (3d Cir. 2000); Williams
v. Sullivan, 970 F.2d 1178, 1182 (3d Cir. 1992).  Substantial
evidence means more than "a mere scintilla."  Richardson v.
Perales, 402 U.S. 389, 401 (1971)(quoting Consolidated Edison Co.
V. NLRB, 305 U.S. 197, 229 (1938)).  It means "such relevant
evidence as a reasonable mind might accept as adequate to support
a conclusion."  Id.  The inquiry is not whether the reviewing
court would have made the same determination, but whether the
Commissioner's conclusion was reasonable.  See Brown v. Bowen,
845 F.2d 1211, 1213 (3d Cir. 1988).

A reviewing court has a duty to review the evidence in its
totality.  See Daring v. Heckler, 727 F.2d 64, 70 (3d Cir. 1984).
"[A] court must 'take into account whatever in the record fairly
detracts from its weight.'" Schonewolf v. Callahan, 972 F. Supp.
277, 284 (D.N.J. 1997) (quoting Willbanks v. Secretary of Health

& Human Servs., 847 F.2d 301, 303 (6th Cir. 1988) (quoting

Universal Camera Corp. V. NLRB, 340 U.S. 474, 488 (1951)).

The Commissioner "must adequately explain in the record his

reasons for rejecting or discrediting competent evidence." Ogden

v. Bowen, 677 F. Supp 273, 278 (M.D. Pa. 1987) (citing Brewster

v. Heckler, 786 F.2d 581 (3d Cir. 1986)).  The Third Circuit has

held that an "ALJ must review all pertinent medical evidence and

explain his conciliations and rejections." Burnett v. Comm'r of

Soc. Sec. Admin., 220 F.3d 112, 122 (3d Cir. 2000).  Similarly,

an ALJ must also consider and weigh all of the non-medical

evidence before him.  Id. (citing Van Horn v. Schweiker, 717 F.2d

871, 873 (3d Cir. 1983)); Cotter v. Harris, 642 F.2d 700, 707 (3d

Cir. 1981).

The Third Circuit has held that access to the Commissioner's

reasoning is indeed essential to a meaningful court review:

> Unless the [Commissioner] has analyzed all
> evidence and has sufficiently explained the
> weight he has given to obviously probative
> exhibits, to say that his decision is
> supported by substantial evidence approaches
> an abdication of the court's duty to
> scrutinize the record as a whole to determine
> whether the conclusions reached are rational.

Gober v. Matthews, 574 F.2d 772, 776 (3d Cir. 1978).  A district

court is not "empowered to weigh the evidence or substitute its

conclusions for those of the fact-finder." Williams, 970 F.2d at

1182.  However, an ALJ need not explicitly discuss every piece of

relevant evidence in his decision.  See Fargnoli v. Massanari,
247 F.3d at 42.

Moreover, apart from the substantial evidence inquiry, a
reviewing court is entitled to satisfy itself that the
Commissioner arrived at his decision by application of the proper
legal standards.  Sykes, 228 F.3d at 262; Friedberg v. Schweiker,
721 F.2d 445, 447 (3d Cir. 1983); Curtin v. Harris, 508 F. Supp.
791, 793 (D.N.J. 1981).

## B.  **Standard for Disability Insurance Benefits**

The Social Security Act defines "disability" for purposes of
an entitlement to a period of disability and disability insurance
benefits as the inability to engage in any substantial gainful
activity by reason of any medically determinable physical and/or
mental impairment which can be expected to result in death, or
which has lasted or can be expected to last for a continuous
period of not less than 12 months.  See 42 U.S.C.
§1382c(a)(3)(A).  Under this definition, a claimant qualifies as
disabled only if his physical or mental impairments are of such
severity that he is not only unable to perform his past relevant
work, but cannot, given his age, education, and work experience,
engage in any other type of substantial gainful work which exists
in the national economy, regardless of whether: (1) such work
exists in the immediate area in which he lives, (2) whether a
specific job vacancy exists for him, or (3) whether he would be

14

hired if he applied for work.   42 U.S.C. §

1382c(a)(3)(B)(emphasis added).

The Commissioner has promulgated regulations for determining disability that require application of a five-step sequential analysis.   See 20 C.F.R. § 404.1520.  This five-step process is summarized as follows:

1.  If the claimant currently is engaged in substantial gainful employment, he will be found "not disabled."

2.  If the claimant does not suffer from a "severe impairment," he will be found "not disabled."

3.  If the severe impairment meets or equals a listed impairment in 20 C.F.R. Part 404, Subpart P, Appendix 1 and has lasted or is expected to last for a continuous period of at least twelve months, the claimant will be found "disabled."

4.  If the claimant can still perform work he has done in the past ("past relevant work") despite the severe impairment, he will be found "not disabled."

5.  Finally, the Commissioner will consider the claimant's ability to perform work ("residual functional capacity"), age, education, and past work experience to determine whether or not he is capable of performing other work which exists in the national economy.   If he is incapable, he will be found "disabled."   If he is capable, he will be found "not disabled."

20 C.F.R. § 404.1520(b)-(f).   Entitlement to benefits is therefore dependent upon a finding that the claimant is incapable of performing work in the national economy.

This five-step process involves a shifting burden of proof.

See Wallace v. Secretary of Health & Human Servs., 722 F.2d 1150, 1153 (3d Cir. 1983).   In the first four steps of the analysis,

15

the burden is on the claimant to prove every element of his claim by a preponderance of the evidence. See id. In the final step, the Commissioner bears the burden of proving that work is available for plaintiff: "[o]nce a claimant has proved that he is unable to perform his former job, the burden shifts to the Commissioner to prove that there is some other kind of substantial gainful employment he is able to perform." Kangas v. Bowen, 823 F.2d 775, 777 (3d Cir. 1987); see Olsen v. Schweiker, 703 F.2d 751, 753 (3d Cir. 1983).

Here, ALJ Strauss concluded that Plaintiff was not disabled within the meaning of the Act. (R. at 16). At step one, the ALJ found that Plaintiff had not engaged in substantial gainful employment since the onset of the alleged disability. (R. at 21). At step two, the ALJ found that Plaintiff suffered "severe impairment" due to her obesity, degenerative joint disease of the knees, depression, and anxiety. (R. at 21). At step three, the ALJ found that Plaintiff's severe impairments did not meet or equal those listed under 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. at 21). However, at step four, the ALJ found that Plaintiff could return to her past relevant work as a checker. (R. at 22). Thus, the ALJ found that Plaintiff was not disabled within the meaning of the Act at step four. (R. at 22).

## C.   Whether Plaintiff's Checker Job was "Past Relevant Work"

Plaintiff argues that the Commissioner's finding of "not disabled" was error because the following findings were not supported by substantial evidence: (1) the ALJ's finding regarding Plaintiff's mental impairments, (2) the ALJ's finding that Plaintiff's subjective complaints of pain were not credible, and (3) the ALJ's finding that Plaintiff could return to her past relevant work.

The ALJ found that Plaintiff was not disabled at step four of the sequential analysis based on the determination that Plaintiff could return to her past relevant work as a checker. Plaintiff worked four months, from October of 2001 through February of 2002, as a checker, sorting checks and recording them in a log book.  Plaintiff argues, however, that her checker job does not constitute past relevant work.

Additionally, assuming that the ALJ's determination of Plaintiff's residual functional capacity was correct,[4] Plaintiff could not return to any of her other prior jobs.  The ALJ found that Plaintiff was limited to sedentary work with no sustained

_____

[4] This Court does not express any opinion as to the ALJ's determination of Plaintiff's residual functional capacity. Plaintiff's arguments regarding her mental capacity and subjective complaints of pain are directed towards this finding. However, because the ALJ erred by finding that Plaintiff's checker job constituted "past relevant work," as discussed infra, this Court need not address those arguments.

17

public contact and no teamwork.  Plaintiff's other jobs at the cleaners and the delicatessens all required light work, which is more than sedentary, and required public contact.  Of her prior jobs, only the checker job was sedentary.  Thus, if the checker job is not past relevant work, then the ALJ erroneously concluded that Plaintiff was not disabled at step four.

The threshold inquiry for this Court is to determine whether the ALJ properly found that Plaintiff's checker job constituted past relevant work.  For the following reasons, this Court finds that the ALJ failed to apply the correct legal standards in determining that the checker job constituted past relevant work. This Court remands to the ALJ with instructions to apply the proper legal standards, discussed infra, to make this determination at step four.

### 1.   **Past Relevant Work**

The ALJ did not apply the proper legal standards in determining that Plaintiff's checker job constituted past relevant work at step four.  This Court is entitled to satisfy itself that the Commissioner arrived at his decision by application of the proper legal standards.  Sykes, 228 F.3d at 262; Friedberg, 721 F.2d at 447; Curtin, 508 F. Supp. at 793.

At step four, the ALJ must determine whether the claimant can still perform "past relevant work;" if so, the claimant will be found "not disabled."  20 C.F.R. § 404.1520(f).  The ALJ makes

18

this determination by comparing the claimant's residual
functional capacity with the physical and mental demands of the
kind of work the claimant has completed in the past, without
consideration of the vocational factors of age, education, and
work experience.   20 C.F.R. § 404.1560(b).

    The regulations define "past relevant work" as "work that
[the claimant has] done within the past 15 years, that was
substantial gainful activity, and that lasted long enough for
[the claimant] to learn to do it."   20 C.F.R. § 404.1560(b)(1).
"Substantial gainful activity" means "work activity that is both
substantial and gainful."   20 C.F.R. § 404.1572.   Work activity
is "substantial" if it "involves doing significant physical or
mental activities. [The claimant's] work may be substantial even
if it is done on a part-time basis . . . ."   20 C.F.R. §
404.1572(a).   Work activity is "gainful" where the claimant
"do[es] it for pay or profit . . . whether or not a profit is
realized."   20 C.F.R. § 404.1572(b).

    In determining whether a claimant's past work constituted
"substantial gainful activity," the "primary consideration will
be the earnings [the claimant] derive[s] from the work activity.
. . [g]enerally, if you worked for substantial earnings, we will
find that you are able to do substantial gainful activity.
However, the fact that your earnings were not substantial will

not necessarily show that you are not able to do substantial gainful activity." 20 C.F.R. § 404.1574(a)(1).

A claimant's earnings show that the claimant engaged in substantial gainful activity if "[b]eginning January 1, 2001 . . . they average more than the larger of: (A) The amount for the previous year, or (B) An amount adjusted for national wage growth . . . ." 20 C.F.R. § 404.1574(b)(2)(ii) (italics in original). However, "[i]f [the claimant's] earnings for months beginning January, 2001, are equal to or less than the amount(s) determined under paragraph (b)(2)(ii) of this section for the year(s) in which [the claimant] work[ed], we will generally consider that the earnings . . . show that [the claimant has] not engaged in substantial gainful activity." 20 C.F.R. § 404.1574(b)(3).

Additionally, the regulations provide further instructions for cases in which the claimant's earnings fall below the guidelines. For below-guidelines earnings from before January 1, 2001, "we will generally consider other information in addition to [the claimant's] earnings (see paragraph (b)(6)(iii) of this section)." 20 C.F.R. § 404.1574(b)(6). In contrast, for below-guideline earnings from after January 1, 2001, "we will **not** generally consider other information in addition to [the claimant's] earnings unless there is evidence indicating that [the claimant] may be engaging in substantial gainful activity . . . ." 20 C.F.R. § 404.1574(b)(6) (emphasis added). Thus, the

regulations treat below-guidelines earnings differently depending
on whether the earnings were from before or after January 1,
2001.  Before January 1, 2001, the regulations generally
contemplate consideration of other factors besides earnings.
However, after January 1, 2001, as in the present case, the
regulations generally only consider earnings unless there is
other evidence that the claimant engaged in substantial gainful
activity.

Case law provides some guidance in interpreting these
regulations.  If the claimant's earnings exceed these regulatory
guidelines, the claimant presumptively engaged in substantial
gainful activity. Wright v. Sullivan, 900 F.2d 675, 677 (3d Cir.
1990); see also Byington v. Chater, 76 F.3d 246, 250 (9th Cir.
1995); see Reeder v. Apfel, 214 F.3d 984, 989 (8th Cir. 2000)
(holding that earnings below the guidelines does not conclusively
determine that the claimant was not engaged in substantial
gainful activity).  However, these cases dealt with earnings from
before January 1, 2001.[5]  Id.  As discussed above, the regulations
treat earnings from *after* January 1, 2001 differently.

These cases interpret the text of section 404.1574(b)(6) for
below-guidelines earnings from *before* January 1, 2001 as creating

_____

[5] This Court's research has not found any district court or
Court of Appeals decisions discussing the text of section
404.1574(b)(6) for below-guidelines earnings from *after* January
1, 2001.

a presumption that the claimant was not engaged in substantial gainful activity.  The text of section 404.1574(b)(6) for below-guidelines earnings from *after* January 1, 2001 must create, at the very least, a stronger presumption that the claimant was not engaged in substantial gainful activity.  Indeed, the language of this regulation indicates that below-guidelines earnings from after January 1, 2001 will generally end the substantial gainful activity inquiry.

Thus, the regulations contemplate that plaintiff can end the substantial gainful activity inquiry with below-guidelines earnings from after January 1, 2001.  Defendant can force the consideration of "other information" by presenting evidence that the claimant engaged in substantial gainful activity.

These principles must guide the analysis of whether Plaintiff's checker job constituted "past relevant work." However, ALJ Strauss, in making this determination, erroneously thought that "past relevant work" was defined at 20 C.F.R. §§ 404.1565 and 416.965.  (R. at 20.)  These sections do not define "past relevant work," but deal with work experience as a vocational factor, which is not germane at this stage of the analysis.  Additionally, the ALJ did not mention the earnings guidelines at all in her opinion, even though the record contains Plaintiff's earnings from her checker job.  Thus, the ALJ did not

apply the proper legal standards in determining that Plaintiff's checker job constituted "past relevant work."

### 2.   **Plaintiff's Other Arguments**

Because this Court has determined that the ALJ applied the improper legal standards in determining that Plaintiff's checker job constituted past relevant work, we need not address Plaintiff's other arguments.

## III. CONCLUSION

For the reasons stated above, the Commissioner's finding that Plaintiff is "not disabled" will be remanded.  On remand, the ALJ should apply the correct definition of "past relevant work," including the earnings guidelines, to determine whether Plaintiff's checker job constituted past relevant work.  The accompanying Order is entered.


_December 6, 2006_
DATE

JEROME B. SIMANDLE
United States District Judge